UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE LESTER MORRIS,

    *Plaintiff,*

v.

    CASE NO. 2:21-cv-10404

    DISTRICT JUDGE NANCY G. EDMUNDS
HEIDI WASHINGTON,   MAGISTRATE JUDGE PATRICIA T. MORRIS
GRECHIN WHITMER,[1]

    *Defendants.*
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF No. 33)**

**I. RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **GRANT** Heidi Washington and Gretchen Whitmer's motion for summary judgment (ECF No. 33).

**II. REPORT**

**A. Introduction**

The Prison Litigation Reform Act ("PLRA") requires all prisoners to exhaust their prison's internal remedies before filing a federal lawsuit concerning the nature of their confinement. But this strict requirement comes with one important caveat—a prisoner need only exhaust those remedies which are "available."

---

[1] The MDOC was terminated from this case on April 9, 2021. The undersigned recognizes that "Grechin Whitmer" is correctly spelled as "Gretchen Whitmer."

Dale Morris is a Michigan inmate who filed a federal lawsuit concerning the housing conditions at his prison without first exhausting his prison's internal grievance process. He explains that he requested grievance forms from two corrections officers, both of whom withheld the form and misinformed him that the MDOC had suspended its internal grievance process during the COVID-19 pandemic. Arguing that the officers deceived him into believing that he could not file a grievance, Morris asserts that his administrative remedies were unavailable and therefore need not have been exhausted. However, Morris's Grievance records reveal that he filed several grievances throughout the pandemic, including one filed less than two weeks before speaking with the officers.

The Defendants now move for summary judgment, arguing that the grievance process was available to Morris, and for the following reasons, I recommend that the Court grant summary judgment in their favor.

**B. Background**

Dale Morris is a prisoner in the custody of the MDOC at the Gus Harrison Correctional Facility ("ARF") in Adrian, who alleges that the housing conditions at his prison caused him to contract COVID-19 twice, and now place him at risk of contracting the virus for a third time. (ECF No. 1, PageID.1–3.)

The MDOC provides a three-step, internal process for prisoners to raise formal complaints. (ECF No. 33-2, PageID.193.) At step one, a prisoner must "attempt to resolve the issue with the staff member involved within two business days" and, if unsuccessful, must file a grievance within five business days. (*Id.* at PageID.196–97.) Prisoners must

submit their step one grievances using a specific form, called a CSJ-247A. (*Id.* at PageID.196.) A prisoner can request a CSJ-247A from any corrections officer or the prison's grievance coordinator. (ECF No. 36-2, PageID.224–25.) If the inmate is dissatisfied with the disposition of the step one grievance, or does not receive a response ten days after the due date, then he or she may file a step two grievance using the appropriate form. (ECF No. 33-2, PageID.198.) Similarly, if the inmate is dissatisfied with the step two response or does not receive a response for ten days after the response was due, he or she has ten days to file a step three grievance. (*Id.* at PageID.199.)

Morris did not follow this procedure. On December 1, 2020, Morris asked a corrections officer, Esther Rodriguez, for a CSJ-247A so that he could file a grievance regarding the prison's housing conditions. (ECF No. 35, PageID.212–13; ECF No. 36-3, PageID.235–36.) Rodriguez refused to provide Morris with a form, explaining that because of complications related to the COVID-19 pandemic, the MDOC stopped processing grievances. (ECF No. 35, PageID.213.) The next day, Morris tried again to obtain a form, this time asking Officer David Paladino. (*Id.*) Like Rodriguez, Paladino explained that because of the pandemic, the MDOC could not review any grievances, and he did not know when the prison would return to accepting grievances. (*Id.*) Believing that he could not utilize the prison's grievance procedures, Morris filed a complaint in this Court two months later without first submitting a grievance. (*Id.*)

Contrary to what Officers Paladino and Rodriguez led Morris to believe, the MDOC never stopped accepting grievances during the pandemic. (ECF No. 36-2, PageID.226, 231–33.) Indeed, officials at the ARF processed over 250 grievances in December 2020,

(*Id.* at PageID.231–33), and Morris himself filed six grievances between May 12, 2020 and November 20, 2020. (*Id.* at PageID.229.) Morris also filed a grievance on January 15, 2021, a month after he spoke with Officers Rodriguez and Paladino, and a month before he filed his complaint. (*Id.*)

After Morris filed his complaint, Heidi Washington and Gretchen Whitmer moved for summary judgment, arguing that Morris failed to properly exhaust his administrative remedies before filing his complaint. (ECF No.33.) In response, Morris concedes that he did not file a grievance, but argues that Officers Paladino and Rodriguez prevented him from filing his grievance by withholding the necessary forms and by misinforming him that the prison would not review his grievance. (ECF No. 35.) Morris does not deny that he utilized the prison's grievance procedures throughout the pandemic. (*Id.*)

### C. Summary Judgment Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at

587-88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D.   Discussion

The PLRA provides that prisoners may not bring a § 1983 action against prison officials, challenging the conditions of their confinement, without first exhausting their available administrative remedies. 42 U.S.C. § 1997e(a) (2018); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Prisoners must "properly" exhaust their administrative remedies, meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006). While the parties agree that Morris did not exhaust his administrative remedies before filing this lawsuit, they dispute whether his administrative remedies were "available" to him. *See* 42 U.S.C. § 1997e(a).

A prisoner's duty to exhaust his or her administrative remedies prior to filing a complaint in federal court extends only to those remedies that are "available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, a prisoner "must exhaust available remedies, but need not exhaust unavailable ones." *Id.* An available remedy is one that is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 732–38 (2001)).

The Supreme Court has recognized three types of situations where an administrative remedy may be unavailable. First, "an administrative procedure is unavailable when" prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Second, an administrative remedy may be unavailable when its rules are "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643–44. And third, prison officials render a prisoner's administrative remedies unavailable where they "thwart [the prisoner] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Or, in other words, a prison official may not "devise procedural" roadblocks that prohibit a prisoner from properly exhausting his grievances. *Id.*

It is this third category that is at issue here. Specifically, Morris argues that prison officials rendered his administrative remedies unavailable in two ways. First, by refusing to provide him with the required grievance forms. And second, by misinforming him that the prison was not accepting grievance forms during the COVID-19 pandemic. On both counts, however, Morris fails to raise a genuine dispute of material fact regarding whether

7

his administrative remedies were unavailable. Accordingly, I suggest that the Court should grant Washington and Whitmer's motion for summary judgment.

### 1. Withheld Grievance Forms

Morris asserts that he asked two corrections officers for a necessary grievance form, and each time, the official refused to provide him a form. One way in which prison officials may thwart inmates from complying with grievance procedures is by withholding the materials that a prisoner needs to properly exhaust his or her claims. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Tilman v. City of St. Louis, Mo.*, No. 21-299, 2021 WL 981859, at *3–4 (E.D. Mo. Mar. 16, 2021); *Hunt v. Carver*, No. 1:19-00356, 2020 WL 9348170, at *8 (S.D. W. Va. Nov. 25, 2020). For example, the Sixth Circuit has held that a prisoner's administrative remedies were unavailable where a prison official would not provide him with a necessary appeal form. *Does 8–10 v. Snyder*, 945 F.3d 951, 966 (6th Cir. 2019). Because the prisoner could not obtain the appeal form from any other prison official, the Court reasoned that the prison official "effectively prevented" the prisoner from using the prison's grievance process. *See id.* at 956–58, 966.

But a prison official who withholds necessary materials does not prevent an inmate from accessing the grievance system if the inmate has other means of obtaining the withheld materials. Although it may be unfair for prison officials to place obstacles in front of a prisoner who attempts to exhaust his or her administrative remedies, the PLRA provides only one exception to its exhaustion requirement—unavailability. *Ross*, 578 U.S. at 639–40 (explaining that courts may not add extra-textual exceptions to the PLRA's

exhaustion requirement). And the Supreme Court has established a low bar for what constitutes an available remedy—any remedy that "is accessible or may be obtained" is available to a prisoner. *Id.* at 642 (internal quotation marks omitted) (quoting *Booth v. Chruner*, 532 U.S. 731, 737–38 (2001)). Thus, even if prison officials inhibit a prisoner's access to the grievance system, the prisoner is not excused from exhaustion unless these obstacles prevent him or her from obtaining some remedy. *See id.*

Indeed, to excuse exhaustion, under the third scenario described in *Ross*, prison officials must "thwart" a prisoner's attempts to pursue his or her administrative remedies. *Ross*, 578 U.S. at 644. Officials who "thwart" an inmate do not simply frustrate the prisoner's attempts at exhaustion; they "defeat" or "successfully" oppose the prisoner's attempts. *Thwart*, *Merriam Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/thwart (last visited April 29, 2022). If a prisoner can procure the denied materials from another source, then his or her remedies have not been "thwart[ed]" and may still "be obtained." *See Ross*, 578 U.S. at 642, 644.

Other courts have reached similar conclusions. In *Saggesse v. Corrente*, for example, the District of New Jersey held that prison officials did not prevent an inmate from pursuing his administrative remedies by declining to provide a necessary grievance form because the inmate made only one "attempt[] to secure a grievance form" and had a "time limitation preventing him from" filing multiple requests. No. 07-4867, 2008 WL 474110, at *5 (D.N.J. Feb. 15, 2008). Similarly, in *Bradley v. Washington*, prison officials denied an inmate "writing materials for a week following" a grievable incident. 441 F. Supp. 2d 97, 101 (D.D.C. 2006). However, because the inmate had "fifteen days from the

9

date of the" incident to file his grievance, his administrative remedies were still available. *Id.*; *see also State v. S.C. Dept. of Corrections*, No. 17-3326, 2019 WL 3773867, at *11 (D.S.C. Aug. 9, 2019) ("[M]erely asking for and not receiving forms is insufficient to meet the standard required by *Ross* . . . .").

Likewise, although the prison officials here frustrated Morris's efforts to pursue his administrative remedies, they did not prevent him from filing his step one grievance by withholding grievance forms. Although the MDOC's grievance procedures require prisoners to use a specific form to file their grievances, these forms "are readily available at each housing unit," and a prisoner can obtain a form by requesting one from a corrections officer. (ECF No 36-2, PageID.224–25; ECF No. 33-2, PageID.196.) Further, from the time a prisoner attempts to resolve an issue with staff, the prisoner has up to five days to submit his or her grievance. (ECF No. 33-2, PageID.197.) However, Morris does not explain why he did not request forms from multiple officers in a single day, nor does he explain why he could not continue to request grievance forms after only two days. (ECF No. 35, PageID.212–13.) Although the risk that Morris's grievance would be rejected as untimely grew as he approached his deadline, he was still obligated to try to utilize the prison's grievance process. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015); *Brock v. Kenton Cty., Ky.*, 93 F. App'x 793, 798 (6th Cir. 2004). Had Morris continued to request grievance forms, he very well could have eventually received one.[2] Accordingly, Officers

---

[2] Of course, Morris need not have continued to request forms, and receive denials, in perpetuity. There may be a point where Morris would have been denied so many forms that, practically speaking, he could not obtain any administrative remedy. But whatever this point may be, Morris's two requests, over the course of only two days, fall short. *See Gruenberg v. Casper*, No. 13-089, 2015 WL 1137855, at *2 (E.D.

10

Rodriguez and Paladino did not thwart Morris from exhausting his administrative remedies by withholding the step one forms. *Cf. Saggesse*, 2008 WL 474110, at *5; *Bradley*, 4441 F. Supp. 2d at 101.

### 2. Misleading Statements

Nor could Officer Rodriguez and Paladino's misleading statements have thwarted Morris from exhausting his administrative remedies. Prison officials may thwart an inmate's attempts at exhaustion through "misrepresentation." *Ross*, 578 U.S. at 644. Where officials provide prisoners with "incorrect information about filing or fail to respond appropriately" to a prisoner's "request to file," the prisoner's administrative remedies are not available. *Salem v. Mich. Dept. of Corrections*, No. 13-14567, 2019 WL 4409709, at *14 (E.D. Mich. Sept. 16, 2019); *accord Davis v. Fernandez*, 798 F.3d 290 (5th Cir. 2015); *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011); *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002). But even where prison officials attempt to mislead a prisoner about the steps necessary to exhaust his or her administrative remedies, a prisoner's administrative remedies are still available if the prisoner either knew of the correct procedures, or could have discovered the correct procedures "through reasonable effort." *Borges v. Cooper*, No. 18-254, 2019 WL 7546940, at *5 (N.D. Fla. Dec. 18, 2019) (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1323–24 (11th Cir. 2007)).

For example, the Eastern District of Wisconsin held that a prisoner's administrative remedies were still available even after an official told the prisoner that he need not file a

---

Wis. Mar. 13, 2015) (holding that prison officials did not render a prisoner's administrative remedies unavailable after the prisoner "made only a single request for an appeal form").

11

grievance, because the inmate did not believe the official. *Miller v. Thurmer*, No. 09-1027, 2011 WL 3687596, at *7 (E.D. Wis. Aug. 22, 2011). The court reasoned that not only did the inmate eventually file an untimely grievance, despite being told a grievance was not necessary, but he also explained that his grievance was late because he was "under heavy dosage of medication," not because he believed he did not need to file a grievance. *Id.*; *see also Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011); *Borges*, 2019 WL 7546940, at *5.

Similarly, here, Morris either knew or should have known that the MDOC was processing grievances. Even accepting Morris's assertion that Rodriguez and Paladino misinformed him that the MDOC stopped processing grievances because of the pandemic, Morris could not have reasonably believed these statements. Indeed, Morris filed eight grievances between May 2020 and March 2021, and he filed one of these grievances on November 20, just eleven days before he met with Officer Rodriguez. (ECF No. 36-2, PageID.229.) Because Morris filed several grievances throughout the pandemic, he should have known that the MDOC did not stop processing grievances. *See Borges*, 2019 WL 3687596, at *5.

Moreover, even if Morris believed the officers, he apparently learned that he could submit grievances before he filed his lawsuit. According to his Grievance Summary Report, Morris also filed a grievance on January 15, 2021—almost an entire month before he filed this lawsuit. (ECF No. 36-2, PageID.229.) Even if his grievance would have been late by this point, he was still obligated to attempt to follow the MDOC's grievance procedures. *See Lee*, 789 F.3d at 677. But rather than file a late grievance, Morris chose

12

not to file a grievance at all. Accordingly, I suggest that Morris failed to properly exhaust his administrative remedies, and that the Court should enter summary judgment in favor of Washington and Whitmer without prejudice. *Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (holding that dismissal for failure to exhaust administrative remedies "should be without prejudice").

### E. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** defendants' motions for summary judgement (ECF No. 33) without prejudice.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 9, 2022                                  s/ Patricia T. Morris
                                                   Patricia T. Morris
                                                   United States Magistrate Judge